UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ALEX ZARCO also known as ALEJANDRO AZRCO; doing business as SUPER-TORTAS ESTILO BARRIO RESTAURANT; individually, | ) No. 1:12-cv-01642-TAB-JMS |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff J&J Sports Production is a closed circuit distributor of sports and entertainment programming. Plaintiff purchases and retains exclusive commercial distribution to television programs, including boxing matches. Plaintiff's distribution rights encompass all undercard events and the main event. [Docket No. 25 at 9.] Plaintiff had exclusive rights to a boxing match televised nationwide on November 13, 2010, entitled "*Tactical Warfare*": *Manny Pacquiao v. Antonio Margarito*. When the boxing match was broadcasted, Defendant Alex Zarco owned and operated Supra-Tortas Estilo Barrio Restaurant, a restaurant with a capacity of 35–50 patrons, located at 1002 N. Main St. Indianapolis, Indiana 46224. [Docket No. 1 at 2; Docket No. 7 at 1; Docket No. 25-4.] Defendant allegedly intercepted, received, and exhibited the boxing match at Super-Tortas. Plaintiff moves for summary judgment, which is unopposed. For the reasons explained below, Plaintiff's motion for summary judgment [Docket No. 25] is granted in part and denied in part.

1

### I. Background

Plaintiff purchases and retains exclusive commercial exhibition licensing rights to a variety of different sports programming. [Docket No. 25-3 at 2.] Plaintiff markets the sub-license rights to commercial customers, which are typically bars, casinos, and restaurants. [*Id.*] Plaintiff hires auditors and law enforcement personnel to detect and identify unlawful transmission of its program. Plaintiff maintains a confidential list of customers that have paid the licensing fee to broadcast its programs. [*Id.*] Auditors visit locations believed to illegally obtain its sports programming and thereafter Plaintiff files suit against individuals believed to be illegally transmitting its programming.

Plaintiff insists that there is no way to mistakenly, innocently, or accidentally intercept its programming. [*Id*. at 3.] Every program is encrypted and Plaintiff must authorize a commercial activation so that a commercial establishment may broadcast its signal. [*Id.*] Sports programming may be unlawfully intercepted by descrambling reception through use of a blackbox or text card. [*Id.* at 3–4.] Unlawful interception can also occur by way of illegal unencryption devices, illegal cable drop or splices from an apartment to a commercial establishment, or purposeful misrepresentation of a commercial establishment as a residential property. [*Id* at 4.]

On November 13, 2010, "Tactical Warfare": *Manny Pacquiao v. Antonio Margarito* aired. Plaintiff had exclusive rights to the distribution of this boxing match. That night, private investigator Thomas G. Newgent entered Defendant's restaurant and observed a wall-mounted 37" Vivizo brand television broadcasting the pay-per-view boxing match. [Docket No. 25-4.] He was not charged a cover fee. [*Id.*] A waiter told Newgent that the restaurant had just closed but if he wanted to chip in, he could watch the *Pacquiao v. Margarito* fight. In the restaurant

Newgent observed only the waiter and his companion.  There were no customers and he did not see any advertisements for the boxing match.  [*Id.*]

### II. Discussion

#### A. Liability

Plaintiff argues that Defendant, in failing to respond to Plaintiff's request for admission, admitted to the material facts of the case.  Defendant failed to respond to any of Plaintiff's discovery requests by the May 7, 2013 deadline or by the seven-day extended deadline Plaintiff provided.  [Docket No. 25 at 12.]  Under Federal Rule of Civil Procedure 36(3), "a matter is admitted unless within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Defendant's failure to respond means that he has fully admitted to the statements set forth by Plaintiff's request for admission.  Such admissions may be used against Defendant in a summary judgment proceeding.  *See Wilson v. Comulx America,* No. 1:11-cv-00980-RLY-MJD, 2013 WL 593974, at *1 (S.D. Ind. Feb. 14, 2013) (unpublished decision); *McCann v. Mangialardi*, 337 F.3d 728, 788 (7th Cir. 2003) (finding admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment).

Defendant's default admissions under Rule 36 will serve as the factual foundation in this case to determine liability.  Accordingly, Defendant admits that he did not order the match from Plaintiff, he did not pay a licensing fee to Plaintiff, and that he intercepted and broadcasted the boxing match at Super-Tortas.  [*See* Docket No. 25-1.]  Defendant also admits to intercepting the program with no intention of paying Plaintiff.  [*Id.*]  Newgent's affidavit and President Joseph M. Gagliardi's affidavit support these admissions.  Newgent observed Super-Tortas's employees watching the boxing match.  At the time the restaurant was closed, there were no patrons in the

3

establishment—though three females exited upon his arrival—and there were no flyers publicizing the boxing match. [Docket No. 25-4 at 1.] Plaintiff did not authorize Defendant to broadcast the match at the restaurant. [Docket No. 25 at 14; Docket No. 25-3 at 2–3.] Moreover, Defendant admits that he never purchased a commercial license from Plaintiff permitting him to exhibit the match lawfully. [Docket No. 25-1 at 6, ¶¶ 1, 2.] In fact, Defendant was unable to broadcast the boxing match lawfully without Plaintiff's authorization. [Docket No. 25-3 at 3–4.]

By default, Defendant also admits to both charging a cover and advertising the event. [Docket No. 25-1 at 6, ¶¶ 5, 6.] Newgent, however, states in his affidavit that there was no cover charge fee and he did not observe flyers or other advertisements for the event. [Docket No. 25-4 at 1.] Plaintiff also mentions in his motion for summary judgment that Newgent did not pay a cover charge fee. [Docket No. 25 at 14.] Under Local Rule 56-1(f), the court will assume that facts claimed by the movant party are admitted without controversy unless it is shown that the movant's facts are not supported by admissible evidence. Here, admissible evidence shows that Defendant did not charge a cover fee and did not advertise the boxing match.

Plaintiff argues that Defendant violated strict liability statute 47 U.S.C. § 553 and § 605. Plaintiff requests damages under 47 U.S.C. § 605 and alleges that Defendant admitted that:

> The event was received because a residential satellite service was diverted into Super-Tortas Estilo Barrio Restaurant, an illegal decoder was used in Super-Tortas Estilo Barrio Restaurant a satellite access card programmed to enable receipt of satellite service without proper authorization or payment was utilized and/or Defendant ordered the Program from a satellite programming provider (e.g. Dish Network, DirecTV) and paid the provider the residential license fee for the program.

[Docket No. 25 at 13.]

The actual request for admission simply states "the event was received within the establishment because residential cable was diverted into the establishment" and "the event was received by the establishment because its agent employed some means to intercept or receive the event." [Docket No. 25-1 at 7, ¶¶ 10, 11.]  Thus, Defendant admitted to diverting residential cable into Super-Tortas but the point at which interception occurred is still unknown.

*B.  Damages*

Determining whether § 553 or § 605 applies depends on the point at which the alleged interception occurred.  *J&J Sports Production, Inc. v. Aguilera,* No. 09-cv-4719, 2010 WL 2362189, at *2 (N.D. Ill. June 11, 2010) (unpublished decision).  The Seventh Circuit determined that "Congress intended for §605 to apply to the unlawful interception of cable programming transmitted through the air, while it intended for § 553 to apply to the unlawful interception of cable programming while it is actually being transmitted over a cable system."  *United States v. Norris,* 88 F.3d 462, 469 (7th Cir. 1996); *see J&J Sports Production, Inc. v. Turrubiartes,* No. 1:11-cv-1496-WTL-TAB, 2013 WL 3878740 (S.D. Ind. July 26, 2013) (unpublished decision).  Though Plaintiff does not provide evidence on how Defendant transmitted the signal, Defendant's admissions establish strict liability of unlawful transmission under either § 553 or § 605.  If the Court were to find that damages fall within the parameters of both statutes—which likely is the case here—it is not necessary for the Court to determine the applicable statute.  *Turrubiartes*, 2013 WL 3878740, at *2.

As an aggrieved party within the meaning of § 553, Plaintiff is entitled to a sum of not less than $250 or more than $10,000 as the Court considers just; if the party willfully commits the violation, the Court may grant an award of damages of not more than $50,000.  47 U.S.C. §

533(c)(3)(A)(ii), (B).  Under § 605, aggrieved parties are entitled to a sum not less than $1,000 or more than $10,000 and if the party willfully commits the violation, the Court may grant an award of damages of not more than $100,000.  47 U.S.C. § 605(e)(3)(c)(i)(II), (ii).  Plaintiff contends that it is entitled to the maximum award.  The Court disagrees.  Given that the restaurant was closed, there were three people watching the program on one television, and no flyers publicizing the event, a more modest award is appropriate.

Plaintiff argues that it should be awarded an enhanced penalty because Defendants' conduct was willful.  The Court has discretion to enhance damages for willful behavior examining "a range of factors, including: (1) the number of violations, (2) the defendant's unlawful monetary gains, (3) plaintiff's actual damages, (4) whether defendant advertised for the event, and (5) whether defendant collected a cover charge on the night of the event."  *J&J Productions, Inc. v. McCausland,* No. 1:10-cv-1564-TWP-DML, 2012 WL 113786, at *4 (S.D. Ind. Jan. 3, 2012) (unpublished decision).  Here, an enhanced penalty is not appropriate.  Super-Tortas transmitted the program after the restaurant closed and there is no evidence of advertisements, unlawful monetary gains, cover charges, or advertisements publicizing the program.  [*See* Docket No. 25-1 at 1.]  Further, Plaintiff provided no evidence that Defendant was a repeat offender.  While the Court is mindful of Plaintiff's argument that an enhanced penalty is necessary to deter further illegal transmission, the overall evidence suggests that an award within the range of statutorily prescribed damages is sufficient to penalize Defendant.

Plaintiff also mentions the tort of conversion as a claim for relief.  Yet Plaintiff fails to address this issue in its brief.  In fact, Plaintiff only mentions conversion in one sentence in its entire brief.  [*See* Docket No. 25 at 26 ("There is no genuine issue of material fact that Defendant committed the tort of conversion.").]  Plaintiff's claim fails absent a developed analysis of the

6

conversion issue.  *See Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived.")  Moreover, the Court finds that § 553 or § 605 adequately address the unlawful interception issues presented by Plaintiff.

### III.  Conclusion

For these reasons, the Plaintiff's motion for summary judgment [Docket No. 25.] is granted in part and denied in part.  Summary judgment is granted as to award Plaintiff statutory damages under §553 or §605.  Summary judgment is denied as to award Plaintiff enhanced statutory damages and conversion damages.  **This cause is set for a damages hearing at 3 p.m. on October 3, 2013**, Room 238, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana, to determine an appropriate award for damages and any attorney's fees.  Parties may present evidence and argument on damages and reasonable fees.

Dated:  9/9/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

ALEX ZARCO
1002 N. Main Street
Indianapolis, IN 46224

Charlie William Gordon
GREENE & COOPER PSC
cgordon@greenecooper.com

Joshua Albert De Renzo
GREENE & COOPER, LLP
jderenzo@greenecooper.com